IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN ILLINOIS

| | |
|---|---|
| DONNIE D. WHITE ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 04 C 5112 |
| ) | |
| KENNETH R. BRILEY, et al. ) | Judge Ronald A. Guzmán |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donnie D. White, currently an inmate at Tamms Supermax Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983, naming 32 defendants in regard to events that allegedly happened at Stateville Correctional Center from May 5, 2002, through May 30, 2002. The Clerk of the Court received White's complaint on August 2, 2004, more than two years after the alleged events.

On September 22, 2004, the court determined that after review of White's complaint and exhibits, it was unable to tell whether White had exhausted his administrative remedies. The court was unable to tell when White had completed the administrative process if he had exhausted. The court was unable to determine whether the statute of limitations should be tolled in this action if White had exhausted his administrative remedies. The court therefore directed the clerk to issue summons to Warden Briley only and directed Briley to file an answer and motion for summary judgment addressing the following issues: (1) whether or not plaintiff exhausted his administrative remedies in regard to the alleged events from May 5, 2002, through May 30, 2002, at Stateville Correctional Center; (2) whether or not plaintiff used the correct procedures in attempting to exhaust his administrative remedies; (3) if plaintiff had exhausted his administrative remedies, on what date

did he do so; and (4) if plaintiff had exhausted his administrative remedies, whether or not the statute of limitations should be tolled.

Briley filed the motion for summary judgment, and White responded. For the following reasons, the court denies Briley's motion for summary judgment as to Briley's argument that White did not exhaust his administrative remedies and grants Briley's motion as to White's claim that the alleged delay in responding to his grievance violated the Due Process Clause of the Fourteenth Amendment.

## BACKGROUND FACTS

According to Briley's Local Rule 56.1 Statement of Facts, White filed suit on August 2, 2004, alleging that defendants violated his Eighth Amendment rights by using excessive force during a cell extraction and denying him medical care for alleged injuries sustained during the cell extraction. He also claims that conditions in the cell in which he was placed for 25 days after the cell extraction violated his Eighth Amendment rights as did the denial of exercise for that period, and that delays in the grievance process violated his due process rights. (*See* Complaint.)

White's complaint alleges that he wrote grievances complaining about these issues, but never received responses at Stateville and appealed to the Administrative Review Board, which did not respond for two years. (*Id.*)

Illinois has a formal grievance procedure for inmates. (*See* Affidavits of Michelle Baggott and Sherry Hile, attached as Exhibits A and B, respectively.)

An inmate may file a grievance on a grievance form after first attempting to resolve the grievance through his counselor. The grievance officer makes a recommendation as to whether the grievance should be approved or denied and forwards the recommendation to the chief

administrative officer, who approves or denies the recommendation. (*Id.*)

An inmate may appeal the denial of a grievance to the Director of Illinois Department of Corrections ("IDOC") by submitting the grievance officer's report and warden's decision within 30 days of that decision. The Administrative Review Board ("ARB") reviews the evidence and may hold a hearing, and then makes a written recommendation on the grievance, which is approved or denied by the Director or his designee. (*Id.*)

Issues pertaining to a facility other than the facility where the inmate is currently assigned may be grieved directly to the ARB. (*Id.*)

An inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the chief administrative officer, rather than a counselor or grievance officer. (*Id.*)

If the chief administrative officer or his designee determines that the grievance poses no substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance is returned to the inmate with directions to follow the normal grievance process. (*Id.*)

A search of the IDOC's records was performed to locate any grievances submitted by White regarding his allegations about the May 5, 2002, cell extraction. (*Id.*) According to White's Master file, White was extracted from his cell on May 5, 2002, after he threw soapy water in a guard's face. White refused orders to submit to handcuffs, so a tactical team was called to extract him. During the cell extraction, White assaulted staff members with a 9-inch homemade knife, inflicting injuries that required medical treatment. (*See* Disciplinary Reports attached to White's June 24, 2002, grievance, attached as Exhibit 3 to Ms. Baggott's Affidavit.)

White was written disciplinary tickets for assault, impairment of surveillance, disobeying a

direct order, and damage or misuse of property. (*Id.*) White appealed the guilty findings by filing a grievance with the ARB. The grievance complains only about the disciplinary process. There is no mention of alleged excessive force or failure to provide medical care that are the subject of this lawsuit. (*See* ARB Letter, attached as Exhibit 4 to Ms. Baggott's Affidavit.) The ARB denied White's grievance on November 1, 2002. (*Id.*)

White submitted two emergency grievances regarding alleged use of force during the cell extraction and alleged denial of medical care and conditions in the cell in which he was placed after the extraction. Both emergency grievances were denied by the warden's office on June 27, 2002, and White was advised to submit his grievances in the normal manner. (*See* May 30, 2002, and June 20, 2002, grievances, attached as Exhibits A and B to Ms. Baggott's Affidavit.)

There is no record of White following up by filing a grievance regarding these issues after his emergency grievances were denied. (Baggott Affidavit, ¶ 9.) The ARB has no record of receiving any grievance from White regarding the May 5, 2002, cell extraction or its aftermath. (*See* Hile Affidavit.)

On the whole, White agrees with Briley's statement of facts. However, White disagrees with the statements that there is no record that he did not follow up after his emergency grievances were denied and that the ARB has no record of receiving any grievance from White in regard to the cell extraction or its aftermath. White states that he filed a grievance in regard to these matters with the correctional counselor, which was not returned. After White was transferred to another facility, he asked his counselor to inquire about the status of this grievance. After receiving no response, White forwarded his grievance to the ARB. (*See* Complaint at ¶ 11 and exhibits 6, 62, 66, f2, f1.) White also talked to Nancy Tucker, an ARB manager on June 17, 2004, who advised him to send her

another copy of the grievance and a brief reminder letter. (*See* exhibits G-2, f2, f1, and complaint at ¶ 11.)

## LEGAL STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In order to present a genuine issue of material fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (*citing First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Id.* at 324.

## DISCUSSION

Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act ("PLRA"), is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violations based on use of excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

The Seventh Circuit addressed the issue of the procedures a prisoner must follow when using the administrative process in *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002), and stated:

> [U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred. Any other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem--or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner.

The internal administrative grievance system of the Illinois Department of Corrections is set out in the Illinois Administrative Code (20 Ill. Admin. Code § 504.810). Inmates must follow these procedures: (1) The inmate must first attempt to resolve the situation through his counselor; (2) If the situation remains unresolved, he may file a written grievance within 60 days after the discovery of the incident, occurrence, or problem which gives rise to the grievance. Upon completion of an investigation by the grievance officer, the conclusions, and, if necessary, recommendations, are

6

forwarded to the Chief Administrative Officer; (3) If the inmate does not believe the situation is resolved, he may appeal to the Director of the IDOC. The Administrative Review Board as the Director's designee reviews the appeal of the grievance and determines whether a hearing is necessary; (4) The Administrative Review Board forwards its decision and any recommendations to the Director or other designee, who makes a final determination.

Both parties agree that White filed two emergencies grievances, dated May 30, 2002, and June 20, 2002, respectively, in regard to these issues. Both these grievances were deemed not to be emergencies by Warden Briley on June 27, 2002.

The parties disagree as to whether White followed up and filed his grievance in the normal manner. Briley states that there is no further record of White filing a grievance through the proper channels. However, White has attached two grievances (Exhibit G-6) regarding these issues. These grievances appear to be exact duplicates of the grievances he filed as emergencies, except for the bottom portion for the Counselor's Response. On the May 30, 2002, grievance, there are two stamp dates: "Received Jun 24 2002" and "Received Aug 13 2002 Office of Inmate Issues." The counselor, L. Briick, has signed the grievance, dated it 7/22/02, and noted: "Unable to resolve at cc level. Forward to grievance office." On the June 20, 2002, grievance, there is one date stamp: "Received Jun 24 2002 Office of Inmate Issues."

Briley argues that White's next step was to submit his grievances to the grievance officer; however, there is no indication that White did so. This is the point where both the procedures for an inmate to follow when a counselor determines that the grievance cannot be resolved and what may have happened to White's grievances becomes confusing.

According to the 20 Ill.Adm.Code 504.810(a), if "an offender is unable to resolve the

7

complaint informally . . . , the individual may file a written grievance on a grievance form." According to 504.810(b), the "grievance form shall be addressed to the Grievance Officer and shall be deposited in the living unit mailbox or other designated repository." In the instant case, White did more than the rules called for, that is, he submitted a written grievance to his counselor, who determined that it could not be resolved on this level. The counselor's notation, "Forward to grievance office," on White's grievance is ambiguous. Does this mean that the counselor was returning the grievance to White for him to deposit in the living unit mailbox or does this mean that the counselor was forwarding it to the Grievance Officer?[1]

In White's most recent filing, a motion for amendments to conform to the evidence, he has attached a copy of a grievance, dated June 24, 2002, in which the counselor noted: "your copies original attachments went to grievance office." However, this particular grievance deals with White's disciplinary proceedings and not the grievance relating to the alleged use of excessive force, denial of medical care, and conditions of his cell.

White has also attached a copy of a memo from a counselor at Tamms Correctional Center who responded to White's hypothetical: "If you filed a grievance at Pontiac and I was the counselor at Pontiac who was processing the grievance, I would finish processing the grievance and forward the grievance to the Grievance Officer. The Grievance Officer would also process the grievance. When the Grievance Officer finished processing the grievance, he/she would look up in the Offender Tracking System your current location, and then forward the response via mail to your new facility."

---

[1] Nothing in this opinion should be taken to mean that the rules regarding grievances need to be changed. The court assumes that the vast majority of complaints by inmates are resolved without a formal writing at the counselor level. The court would not want to put an onus on both inmates and counselors to require a writing from an inmate for every complaint at the counselor level.

8

White has attached a copy of the Grievance Officer's Report in regard to the grievance he filed in regard to his disciplinary hearing, and it appears that the Grievance Officer at Stateville followed the above procedure, that is, she sent the report to Pontiac, where White had been transferred.[2] However, this still does not answer the question as to what happened to the grievance White filed in regard to his allegations of excessive force, denial of medical care, and condition of his cell.

White has attached a document in which he states that after he received Counselor L. Briick's response in regard to his grievance dealing with personal property/staff conduct, he sent it to the grievance office at Pontiac on December 22, 2002. White has attached an "Administrative Review Board Return of Grievance or Correspondence," received on August 13, 2002, in which the ARB returned his grievance regarding property, staff conduct, and medical, noting that until Stateville responded to him, the ARB would not address the grievance. The rest of White's documentation are replete with letters and the like in White's efforts to find out what happened to this grievance and to have it addressed.

On August 13, 2003, White filed an action regarding these allegations, *White v. Briley*, 03 C 5586 (N.D. Ill.). The court dismissed the action without prejudice for failure to exhaust administrative remedies because White had indicated "inadequate exhaustion of remedy." White went back to the drawing board in an effort to find out what had happened to his grievance and to make every attempt to complete the grievance process.

---

[2]It appears that when an inmate does submit a written grievance to his counselor at this first stage of the grievance process, many counselors forward written grievances that cannot be resolved directly to the Grievance Officer rather than returning the written grievance to the inmate to be sent to the Grievance Officer. Whether or not this informal, time-saving procedure needs to be addressed, the court leaves to the sound discretion of IDOC. Most of the time, the instant case being a rare exception, it does not matter whether the counselor forwards the grievance to the Grievance Officer or returns it to the inmate to send to the Grievance Officer.

White had 60 days to file his grievance, so any grievances he filed in regard to these allegations had to have been filed at Stateville Correctional Center because he was not transferred to Pontiac until either August 1 or 13, 2002 (he gives both dates), which was more than 60 days after the alleged incidents. The confusion as to his grievance undoubtedly has arisen because White has a proclivity to file numerous grievances, letters, and the like. It is not surprising that when any organization is bombarded with a snowstorm of paper, something is likely to get lost. White would be well advised to keep his grievances short and to the point and to carefully follow all procedures in the future.

The court finds White's Exhibit G-7, the "Administrative Review Board Return of Grievance or Correspondence" persuasive in regard to his efforts to exhaust his administrative remedies. The ARB clearly informed him that they would not address the issues of property, staff conduct, and medical until Stateville had responded to his grievances. The Grievance Officer at Stateville never responded in regard to these issues, although it appears she responded to the grievances concerning White's disciplinary hearing. White's exhibits demonstrate that he attempted on every level possible to have his grievance addressed.

In *Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002), the Court of Appeals held that an inmate's administrative remedies are deemed exhausted when prison officials fail to respond to his grievances, thus making the administrative remedies unavailable. The court emphasized that it refused "to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.' *Goodman v. Carter*, No-2000 C 948, 2001 WL 755137, at *3 (N.D.Ill. July 2, 2001)."

The court accordingly deems White to have exhausted his administrative remedies.

10

The next question is whether this action is barred by the statute of limitations. The statute of limitations for § 1983 actions arising in Illinois is two years. *See Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001), *citing Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998); *Farrell v. McDonough*, 966 F.2d 279, 280-82 (7th Cir. 1992); *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989). However, the time spent in exhausting administrative remedies is tolled for purposes of limitations on filing a federal complaint. *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001) (holding that "in the ordinary case, a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process"). In the instant case, White filed his first case regarding these claims within the statute of limitations; however, this court directed him to exhaust his administrative remedies. Whether or not this court should have deemed his administrative remedies exhausted then is not important now. What is important is that White has attempted assiduously to find out what happened to the grievance he filed in regard to these alleged events and to have his grievance acted upon.

The court therefore determines that the statute of limitations is tolled.

Briley also argues that the alleged delays in responding to White's grievances does not violate due process. The Illinois prison grievance procedure is a procedural right only and does not give rise to a protected liberty interest requiring the procedural safeguards of the Fourteenth Amendment. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Quinlan v. Fairman*, 663 F.Supp. 24, 27 (N.D.Ill. 1987); *Bell v. Lane*, 657 F.Supp. 815, 817 (N.D.Ill. 1987); *Woodall v. Partilla*, 581 F.Supp. 1066, 1076 (N.D.Ill. 1984); *Azeez v. DeRobertis*, 568 F.Supp. 8, 9 (N.D.Ill. 1982). Because White has no protected liberty interest in the grievance process, the court grants Briley's motion for

summary judgment and dismisses this claim. Defendants Nancy S. Tucker and Carmen Ruffin are dismissed from this action.

## CONCLUSION

For the foregoing reasons, the court denies Briley's motion for summary judgment as to Briley's argument that White did not exhaust his administrative remedies and grants Briley's motion as to White's claim that the alleged delay in responding to his grievance violated the Due Process Clause of the Fourteenth Amendment. The clerk is directed to issue summonses to defendants Mote, Catchings, Hunter, Hoiser, Morgan, Vandiver, Shan, Agiven, Peto, Edwards, Wright, Harris, Martin, Sawyer, King, Calmes, Bell, Baldwin, Turner, Thompson, Artl, Lankiston, Sermon, Grubbs, Briik, Schonaur, Tilden, Adams, and Danny. The court grants White's motion for amendments to conform to the evidence. The court denies White's motion for discovery of all court records and tangible documents pertaining to above entitled cause of action. *In forma pauperis* status does not entitle a plaintiff to copies of documents. White may obtain copies by writing the Certified Copies Desk at the Clerk's Office. The Certified Copies Desk will inform White what the procedure is for obtaining copies and what the total cost will be.

**SO ORDERED**  ENTERED: 7/1/05

*[signature]*

**HON. RONALD A. GUZMÁN**

**United States District Judge**