# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN ILLINOIS

| | | |
|---|---|---|
| **DONNIE D. WHITE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **KENNETH R. BRILEY, STEPHEN MOTE,** | ) | 04 C 5112 |
| **ROBERT CATCHINGS, DARRIN HUNTER,** | ) | |
| **MARK HOSEY, KIM MORGAN, LEON** | ) | |
| **VANDIVER, KENNETH AGNEW, CHARLES** | ) | |
| **SHAW, DARRYL EDWARDS, MARTIN** | ) | |
| **PETO, CLARENCE WRIGHT, ANTHONY** | ) | Judge Ronald A. Guzmán |
| **HARRIS, PHILLIP MARTIN, JEFFREY** | ) | |
| **SAWYER, JIMMIE KING, CALVIN BELL,** | ) | |
| **ROTELL CALMES, ANTHONY SELMON,** | ) | |
| **EDMUND BALDWIN, LESLIE TURNER,** | ) | |
| **JONATHON THOMPSON, DANIEL ARTL,** | ) | |
| **ADEWALE LANGSTON, SHAWNEL** | ) | |
| **GRUBBS, LOUIS BRIICK, GEORGIA** | ) | |
| **SCHONAUER, JOHN ADAMS, JR.,** | ) | |
| **DANIELLE TAYLOR and ANDREW** | ) | |
| **TILDEN,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Donnie D. White, proceeding *pro se*, has sued defendants pursuant to 42 U.S.C. § 1983 for their alleged violations of his Eighth and Fourteenth Amendment rights. The case is before the Court on two Federal Rule of Civil Procedure ("Rule") 56 motions for summary judgment, one filed by Andrew Tilden, and the other filed by Kenneth Briley, Stephen Mote, Robert Catchings, Darrin Hunter, Mark Hosey, Kim Morgan, Leon Vandiver, Kenneth Agnew, Charles Shaw, Darryl Edwards, Martin Peto, Clarence Wright, Anthony Harris, Phillip Martin, Jeffrey Sawyer, Jimmie King, Calvin Bell, Rotell Calmes, Anthony Selmon, Edmund Baldwin, Leslie Turner, Jonathan Thompson, Daniel

Artl, Adewale Langston, Shawnnel Grubbs, Louis Briick, Georgia Schonauer, John Adams, Jr. and Danielle Taylor (collectively, "Briley Defendants"). For the reasons set forth below, the Court grants in part and denies in part both motions.

## Facts[1]

At all times relevant to this suit, plaintiff was an inmate at the Illinois Department of Corrections ("IDOC's") Stateville facility, and defendants worked there in various capacities: Briley was the warden; Mote and Catchings were assistant wardens; Hunter and Hosey were superintendents; Vandiver, Agnew, Shaw and Morgan were captains; Edwards, Peto, Wright, Harris, Martin, Sawyer and King were lieutenants; Bell, Calmes, Selmon and Baldwin were sergeants; Turner, Thompson, Artl, Langston and Grubbs were correctional officers; Briick was a correctional counselor; Schonauer was a correctional casework supervisor; Taylor and Adams were correctional medical technicians ("CMTs"); and Tilden was a staff physician. (Pl.'s Stmt. Facts Local Rule 56.1(a)(1) filing ("Pl.'s Resp. Briley Defs.' Facts") ¶¶ 1-30; Pl.'s Local Rule Resp. Def.'s Stmt. Material Facts ("Pl.'s Resp. Tilden's Facts") ¶ 4.[2])

On May 5, 2002, plaintiff threw soap and water on a correctional officer who is not a defendant in this case. (Pl.'s Resp. Briley Defs.' Facts ¶ 9.) Consequently, defendants Sawyer and Martin went to plaintiff's cell and told him to "cuff up," *i.e.*, present his hands for handcuffing, so they could take him to disciplinary segregation. (*Id.* ¶ 12.) When plaintiff refused their order,

---

[1]Unless noted otherwise, the following facts are undisputed.

[2]Tilden's fact statement has two paragraphs numbered "4." This is the first one, and the Court will refer to the second one as paragraph 5.

Sawyer and Martin left the unit, and a TACT team was assembled to extract plaintiff from his cell. (Tilden's Stmt. Material Facts, Ex. E, Pl.'s Dep. ("Pl.'s Dep.") at 35-36; Pl.'s Resp. Briley Defs.' Facts ¶ 13.)

The TACT team consisted of defendants Artl, King, Calmes, Turner, Grubbs, Langston and Thompson, who videotaped the extraction. (Pl.'s Dep. at 115, 118-22.) The videotape shows that plaintiff's mattress was propped against his cell door when the TACT team arrived. (*Id.* at 122; Briley Defs.' Local Rule 56.1 Stmt. Uncontested Facts, Ex. E, Videotape 5/5/02 Cell Extraction ("Video"); Pl.'s Resp. Briley Defs.' Facts ¶ 14.) Artl ordered plaintiff to "cuff up" three times, orders that plaintiff ignored. (Pl.'s Resp. Briley Defs.' Facts ¶¶ 14-15; *see* Video). Artl then tried to enter plaintiff's cell but backed out when plaintiff swung at him with a knife. (Pl.'s Dep. at 48-56; *see* Video.) The TACT officers told plaintiff they would use a chemical agent if he did not comply with their orders. (*Id.*) Plaintiff did not comply, so the officers sprayed a chemical agent into his cell and then entered it. (*Id.*)

Plaintiff claims that, when they entered, Turner hit him with "a stick." (Pl.'s Dep. at 56-57.) The blow caused plaintiff to fall onto the toilet, but he kept control of the knife. (*Id.* at 57-62.) The officers moved plaintiff from the toilet to the floor, at which point plaintiff lost the knife. (*Id.* at 64.) Though plaintiff denies it, Artl, Grubbs and Langston claim that he stabbed them before he lost the knife. (Pl.'s Resp. Briley Defs.' Facts ¶ 18.) Once he was on the floor, plaintiff says, the officers "beat [him] down." (Pl.'s Dep. at 65-68.)

Once plaintiff was subdued, the TACT officers cuffed his hands, put him in a headlock, which plaintiff says made him "slightly pass[] out," and walked him down the stairs. (*Id.* at 71, 73-75; *see*

Video.) The officers took plaintiff to the day room and, as the videotape shows, removed the layers of clothing plaintiff had put on before they came to get him. (*Id.* at 76-77; Video.)

Afterwards, the officers took plaintiff to a shower, which was a feet away, to wash off the chemical agent. (Pl.'s Dep. at 78.) When he was in the shower, defendant Taylor arrived. (*Id.* at 76.) Plaintiff says he told her that he was injured, but she did nothing but tell him to sign up for sick call. (*Id.*) Taylor claims she flushed his eyes with water, rinsed the chemical agent off him and saw no evidence that he was injured. (Briley Defs.' Stmt. Material Facts ¶¶ 33-37.)

Subsequently, the TACT officers put plaintiff in a strip cell in the close supervision segregation unit ("1A wing"). (Pl.'s Dep. at 81; Briley Defs.' Mot. Summ. J., Ex. I, Wright Aff. ("Wright Aff.") ¶¶ 5-6.) Inmates in those cells are not given mattresses or prison clothing. (*Id.* ¶¶ 6-8.) But defendants say they are given a paper gown to wear, and are evaluated after forty-eight hours to determine if they can go back into the general prison population. (*Id.* ¶¶ 6-9.)

Plaintiff says defendants put him in a cell on 1A wing without any clothes at all, in his words, "asshole naked." (Pl.'s Dep. at 81.) Further, he says the cell was extremely cold because it had a broken window, and neither the sink nor toilet had water. (*Id.* at 81-82, 91, 141, 145.)

On May 16, 2002, eleven days after plaintiff was put on 1A wing, Wright and Harris moved him to a new cell on that wing, a process observed by Agnew. (*Id.* at 88-90.) Plaintiff says the toilet and sink in the new cell did not work either, and sewage was leaking into the cell from a nearby pipe. (*Id.* at 146-48.) Plaintiff also claims that, during the move, he asked Wright, Harris, Agnew and Bell for clothes and medical care, but his requests were ignored. (*Id.* at 88-90, 110-11.)

According to plaintiff, on May 19, 2002, Hosey and Morgan shook down his new cell and made him stand in sewage throughout the twenty-five minute process. (Pl.'s Resp. Briley Defs.'

4

Facts ¶¶ 6, 10.) Moreover, plaintiff says both men refused to give him clothing, bedding, cleaning supplies or medical care. (*Id.*)

On May 30, 2002, twenty-five days after the extraction, plaintiff was admitted to the infirmary for observation because he was exhibiting anti-social behavior. (Pl.'s Resp. Tilden's Stmt. Facts ¶ 11.) Tilden says Dr. Ngu, a non-party, examined plaintiff when he was admitted and saw no signs of injury. (Tilden's Stmt. Material Facts, Ex. D, Ngu Decl. ¶¶ 6-8.) Plaintiff says he was never examined by Ngu and, if any records reflect that he was, they are false. (Pl.'s Resp. Tilden's Facts ¶¶ 12-13.)

On May 31, 2002, plaintiff was examined by Tilden, who diagnosed plaintiff with constipation. (*Id.* ¶¶ 17-18.) Plaintiff admits that constipation was the recorded diagnosis, but says he told Tilden he had been beaten during the cell extraction and, as a result, "had a knot on [his] head. . . . [b]ad headaches" and episodes of blurred vision. (*Id.* ¶ 18; Pl.'s Dep. at 130-32.) Plaintiff also claims that he showed Tilden bruises and other marks from the beating that remained on his body. (Pl.'s Dep. at 130-32.) Moreover, plaintiff says Tilden told him he would get Motrin for pain and would be scheduled for x-rays. (*Id.* at 131.)

According to defendants, on June 1, 2002, plaintiff was again examined by Ngu, who noted that plaintiff appeared clean and calm and moved about his cell normally. (Tilden's Stmt. Material Facts ¶ 21.) Plaintiff denies that Ngu examined him. (Pl.'s Resp. Tilden's Facts ¶ 21.)

## **Discussion**

Summary judgment is proper when the "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that

5

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

**Exhaustion**

Tilden argues that he is entitled to summary judgment because plaintiff failed to exhaust IDOC's administrative remedies before he filed this suit, as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed."). To exhaust remedies, an inmate must take all of the steps required by the prison's grievance system. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Among other things, the IDOC system requires an inmate to submit a written grievance to the facility's grievance officer, who investigates it and sends his findings to the warden for a final decision. 20 Ill. Admin. Code § 504.810-50. If the inmate is unhappy with the warden's decision, he must appeal it to the Director of IDOC. *Id.*

Plaintiff filed a grievance against Tilden on June 20, 2002, which was later returned to him because he had submitted it directly to the Director of IDOC, rather than to Stateville's grievance officer. (Pl.'s Resp. Tilden's Facts ¶ 27.) Tilden says plaintiff did not properly file the grievance after it was returned to him, and thus, failed to exhaust administrative remedies.

6

The Court thoroughly addressed – and rejected – this argument in its order denying defendant Briley's motion for summary judgment on the same grounds. (*See* 7/1/05 Mem Op. & Order at 7-10.) For the reasons set forth in that order, the Court rejects Tilden's exhaustion argument as well.

**Merits**

Plaintiff contends that Briley, Catchings, Mote, Hunter, Hosey, Morgan, Vandiver, Agnew, Shaw, Edwards, Peto, Wright, Harris, Martin, Sawyer, King, Bell, Calmes, Selmon, Baldwin, Turner, Thompson, Artl, Langston, Grubbs, Briick, Schonauer, Adams, Taylor and Tilden are liable under 42 U.S.C. § 1983 for violating his Eighth and Fourteenth Amendment rights. There is no supervisory liability under section 1983. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Section 1983 liability can be imposed on only if an individual causes a constitutional deprivation either by participating in it or by acquiescing to it "in some demonstrable way." *Id.*

Plaintiff has not created a genuine issue of fact as to whether Briley, Catchings, Mote, Selmon and Baldwin were personally involved in any of the alleged deprivations. Plaintiff testified that his claims against these defendants were based on their supervisory positions at Stateville and/or their failure to take action in response to complaint letters he sent them in May 2002. (Pl.'s Dep. at 83-86, 105-15, 117, 124-26.)

The former ground is not a basis for liability. *Palmer*, 327 F.3d at 594. The latter might be, if there were evidence to suggest that defendants received his letters, or should have, because plaintiff sent them in the manner prescribed by IDOC. But there is no such evidence. Rather, plaintiff admits that he does not know if defendants actually received his letters and says he "mailed" them by sliding them to his neighbor's cell and asking him to give the letters to "the police." (Pl.'s Dep. at 83-87.)

7

The record is silent as to what, if anything, plaintiff's neighbor did with the letters. Absent evidence that the neighbor properly mailed them, plaintiff has not created a material fact issue as to whether Briley, Catchings, Mote, Selmon or Baldwin knew about, let alone participated in, the alleged deprivations. Those defendants are, therefore, entitled to judgment on plaintiff's section 1983 claims.

There is also not an issue for trial concerning Sawyer and Martin's personal involvement. It is undisputed that these two defendants did nothing more on May 5, 2002 than order plaintiff to cuff up after he had thrown water on another correctional officer. (*Id.* at 32-36, 116-17.) It is also undisputed that, after plaintiff refused their order, they left his cell block and had no further contact with him. (*Id.* at 35-36.) Because there is no dispute that Sawyer and Martin did not participate in any of the alleged deprivations, they are also entitled to judgment on plaintiff's claims.

**Eighth Amendment – Excessive Force**

Plaintiff claims that TACT team defendants King, Calmes, Turner, Artl, Grubbs and Langston violated his Eighth Amendment rights by using excessive force against him during the cell extraction, and Thompson, who videotaped it, did so by failing to intervene. Defendants argue that they have qualified immunity on these claims.

Defendants are entitled to such immunity if a reasonable officer in the same circumstances would use the same kind of force to get plaintiff out of his cell and into segregation. *See Anderson v. Creighton,* 483 U.S. 635, 638 (1987) (stating that government officials have qualified immunity if "their actions could reasonably have been thought consistent with the rights they are alleged to have violated"); *see also Hudson v. McMillian,* 503 U.S. 1, 7 (1992) (Eighth Amendment is violated if defendant uses force to harm plaintiff, not if he does so in "a good-faith effort to maintain or restore

discipline"). The record establishes that any reasonable officer, faced with plaintiff's behavior, would have used the measures employed by defendants to extract him from his cell.

It is undisputed that on May 5, 2002, the TACT team was mobilized in response to plaintiff's refusal to cuff up for Martin and Sawyer. (Pl.'s Dep. at 35-36, 115, 118-22; Pl.'s Resp. Briley Defs.' Facts ¶ 13.) There is also no dispute that, when the TACT team arrived at plaintiff's cell, they found that he had barricaded the door with his mattress. (Pl.'s Dep. at 122; Video; Pl.'s Resp. Briley Defs.' Facts ¶ 14.) Similarly, plaintiff admits that the TACT officers gave him three orders to cuff up and told him they would use chemical agents if he refused. (Pl.'s Resp. Briley Defs.' Facts ¶¶ 14-15; Video). He also admits that he refused those orders and tried to stab the officer who first entered his cell. (Pl.'s Dep. at 48-56; Video.) Thereafter, it is undisputed, that the TACT officers sprayed three cans of a chemical agent into plaintiff's cell, but he still refused to submit. (*Id.*)

The parties dispute what happened when the TACT team finally entered the cell. Defendants say plaintiff continued to resist, by throwing a television at them, refusing to give up his knife and stabbing Artl, Grubbs and Langston. (Briley Defs.' Stmt. Material Facts ¶¶ 16-19. ) Plaintiff says the officers quickly subdued him, beat him after he was under their control and unnecessarily used a headlock to move him out of his cell. (Pl.'s Dep. at 65-68.)

The videotape of the extraction, which the Supreme Court has held supersedes the parties' recollection of events, *see Scott v. Harris*, ___U.S. ___, 127 S.Ct. 1769, 1776 (2007), does not capture all of the events inside the cell. However, it does show that (1) plaintiff repeatedly tried to stab the officers as they tried to wrest the mattress from his cell door; (2) when they finally entered the cell, they repeatedly ordered plaintiff to give up his knife; (3) the officers struggled with plaintiff

9

for about two minutes; (5) after plaintiff was subdued and removed from the cell, he asked the officers to loosen his hand cuffs an summon a CMT, both of which they did.

Taken together, the videotape and the other undisputed facts establish that defendants: (1) employed force only because plaintiff repeatedly refused their orders to cuff up; (2) escalated the force in response to plaintiff's attempts to stab them and his refusal to relinquish the mattress and knife; (3) struggled very briefly with plaintiff when they could finally enter his cell; (4) used a headlock on plaintiff, but only to get him out of the cell and downstairs to the shower; (5) gave plaintiff a chance to rinse off the chemical agent; (6) loosened his handcuffs when he said they were too tight; and (7) summoned a CMT at his request. Given all of theses undisputed facts, no rational jury could find that a reasonable correctional officer in the same situation would use less force to transfer plaintiff from his cell to segregation than defendants employed. Thus, King, Calmes, Turner, Artl, Grubbs, Langston and Thompson are, as a matter of law, entitled to qualified immunity on plaintiff's excessive force claim.[3]

**Medical Care**

Plaintiff also contends that King, Calmes, Turner, Artl, Grubbs, Langston, Thompson, Briick, Schonauer, Adams, Taylor and Tilden violated his Eighth Amendment rights by refusing to provide him medical care after the cell extraction. Defendants violated plaintiff's Eighth Amendment rights if they were deliberately indifferent to plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S.

---

[3]Even if they were not immune, these defendants would be entitled to judgment on the merits of this claim because plaintiff has no evidence to suggest that any of them intended to hurt him. *See Hudson* 503 U.S. at 9 (stating that prison officials violate Eighth Amendment only if they use force "maliciously and sadistically . . . to cause harm" rather than to maintain discipline).

97, 104 (1976). "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (quotation omitted). Defendants were deliberately indifferent to one of his needs if they knew about it, and the excessive risk it posed to plaintiff's health, but "fail[ed] to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Plaintiff has not created a material fact issue as to whether King, Calmes, Turner, Artl, Grubbs, Langston and Thompson acted with deliberate indifference. On the contrary, the videotape shows that defendants summoned a CMT for plaintiff, at his request, immediately after the extraction. (*See* Video.) Because the record establishes that these defendants were not deliberately indifferent to plaintiff's medical needs, their motion for summary judgment on this claim is granted.

The result is the same for defendant Schonauer. The record supports the inference that plaintiff asked Schonauer to get him medical care, but it does not support the inference that she received that request. Plaintiff admits that he communicated with Schonauer only in writing and that he "sent" his letter to her by sliding it to his neighbor and asking him to "give it to the police." (Pl.'s Dep. at 124-26.) Absent evidence that his neighbor did so, which plaintiff does not provide, there is no triable fact issue as to whether Schonauer was deliberately indifferent to plaintiff's needs.

Briick is also entitled to judgment on this claim. Plaintiff testified that he did not have any communication with Briick about the events underlying this suit until after May 30, 2002, and that Briick did not see his grievance about them until after plaintiff was transferred to another IDOC facility. (*Id.* at 126-27.) Because there is no evidence to suggest that Briick knew about plaintiff's alleged medical needs, he cannot be liable for deliberately disregarding them.

The situation is different for defendant Taylor. She says she is also entitled to summary judgment because the record shows that, after the extraction, she: (1) responded to the TACT team's call for medical assistance; (2) flushed plaintiff's eyes with water and put him in a cool shower; and (3) examined him, finding no lacerations, abrasions or other signs of injury. (Briley Defs.' Stmt. Material Facts ¶¶ 33-37.)

The record does, indeed, contain such evidence. But it also contains plaintiff's testimony that Taylor responded to the TACT team's call but did not examine him, shower him or give him any treatment and failed to document his true condition. (Pl.'s Dep. at 76-78; Pl.'s Resp. Briley Defs.' Facts ¶¶ 33-37.) Given these factual disputes, Taylor's motion must be denied.

The result is the same for defendant Adams, who was also a Stateville CMT. (Pl.'s Resp. Briley Defs.' Facts ¶ 30.) Plaintiff says Adams was assigned to 1A wing and saw plaintiff four times when he was housed there. (Pl.'s Dep. at 123-24.) Plaintiff also says he told Adams about the events of May 5, 2002 and that he wanted to see a doctor. (*Id.*) Moreover, plaintiff contends that Adams saw that plaintiff had a swollen jaw and heard him complain of pain, nausea and fatigue but did nothing. (*Id.*) Those facts are sufficient to defeat Adams' motion for summary judgment on this claim.

The medical care claim against Tilden must be tried as well. There is some evidence to support Tilden's position. (*See* Pl.'s Resp. Tilden's Facts ¶¶ 10, 18, 19 (admitting that Tilden examined plaintiff twenty-six days after the extraction; diagnosed him with constipation; and did not note in plaintiff's medical record that Tilden saw, or heard about, injuries when he examined plaintiff).) But plaintiff, in whose favor the facts must be viewed, contends that: (1) on May 30, 2002, he still had, and Tilden saw, evidence of injuries he sustained during the cell extraction; (2) he

told Tilden his version of the May 5 events, and Tilden said he would prescribe Motrin for plaintiff and send him for X-rays; and (3) he was never examined by Ngu, regardless of what his medical records may say. (*Id.* ¶¶ 12-13, 15-16, 21-23; Pl.'s Dep. at 130-32.) In short, the parties dispute whether Tilden was deliberately indifferent to plaintiff's serious medical needs. Thus, his motion for summary judgment on this claim is denied.

**Cell Conditions**

Plaintiff alleges that defendants Vandiver, Shaw, Edwards, Hunter, Agnew, Wright, Harris, Hosey, Morgan, Peto, Bell, Adams, Schonauer and Briick violated his Eighth Amendment rights by subjecting him to inhumane prison conditions.[4] *See Farmer*, 511 U.S. at 832 (stating that Eighth Amendment extends to conditions of confinement). To defeat defendants' motion on this claim, plaintiff must offer evidence that: (1) viewed objectively, the conditions in which he was confined denied him a basic human need; and (2) each defendant was deliberately indifferent to the fact that he was being held in such conditions. *Farmer*, 511 U.S. at 834.

It is undisputed that plaintiff was in segregation on 1A wing from May 5, to May 30, 2002. (Pl.'s Dep. at 81, 87; Briley Defs.' Mem. Supp. Mot. Summ. J. at 12.) It is also undisputed that he spent the first eleven days of that period naked, in a cell that had a toilet that did not flush, a sink with no running water and a broken window that exposed him to temperatures as low as 39 degrees. (Briley Defs.' Mem. Supp. Mot. Summ. J. at 12-14; Pl.'s Dep. at 91, 141, 145-47); *see* http://www.idoc.state.il.us/subsections/facilities/information.asp?instchoice=sta (saying Stateville

---

[4]To the extent plaintiff is asserting this claim against defendant Taylor, it fails because there is no evidence to suggest that she had any contact with him after May 5, 2002. (*See* Pl.'s Dep. at 122-23.)

is in Joliet); http://www.wunderground.com/history/airport/KJOT/2002/5/5/DailyHistory.html (setting forth high and low temperatures recorded in Joliet from May 5, through May 16, 2002).[5] Moreover, viewed favorably to plaintiff, the record also shows that he spent the last fifteen days of that period without clothing or bedding and in a cell containing raw sewage. (Pl.'s Dep. at 88-90, 146-48.) Those facts are sufficient to raise a triable issue as to whether plaintiff was confined in conditions that denied him a basic human need. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007 (per curiam) (reversing summary judgment for defendants on Eighth Amendment claim because the record, viewed favorably to plaintiff, showed that he spent six days in a cell with a broken sink and toilet and walls smeared with blood and feces without clothes, bedding or hygiene items).

The record also raises a fact issue as to whether Vandiver, Shaw, Edwards, Hunter, Agnew, Wright, Harris, Hosey, Morgan, Peto, Bell and Adams were deliberately indifferent to the conditions in which plaintiff was held. Viewed favorably to plaintiff, the record shows that all of these defendants saw plaintiff when he was on 1A wing and most of them ignored his explicit requests for clothes and bedding. (*See* Pl.'s Dep. at 87-92, 110-16, 123-24.) These facts support the inference that these defendants knew plaintiff was being held, for an extended period, completely naked, in cells containing human waste. Thus, Vandiver, Shaw, Edwards, Hunter, Agnew, Wright, Harris, Hosey, Morgan, Peto, Bell and Adams are not entitled to summary judgment on the cell conditions claim plaintiff asserts against them. *See Vinning-El*, 482 F.3d at 924-25 (stating that "[d]eliberate indifference can be established by inference from circumstantial evidence" and "a reasonable jury

---

[5]The Court takes judicial notice of Stateville's location and the high and low temperatures there in May 2002. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

could infer that prison guards working in the vicinity necessarily would have known about the condition of the segregation cells").

The record does not, however, raise a fact issue as to whether Schonauer was deliberately indifferent to plaintiff's cell conditions. With respect to Schonauer, plaintiff testified: "She didn't come over to the cell house – I don't know if she came there. She never came on my wing while I was there." (Pl.'s Dep. at 125.) Moreover, as noted above, there is no evidence to support plaintiff's assertion that she received his complaint letter, or even that it was properly mailed. Thus, Schonauer is entitled to judgment as matter of law on plaintiff's cell conditions claim.

Briick is entitled to judgment as well. As noted above, there is no evidence that Briick saw or communicated with plaintiff while he was in segregation or that Briick otherwise knew about the alleged conditions of plaintiff's cells there. (*See* Pl.'s Dep. at 126-27.) Without such evidence, there is no triable fact issue as to whether Briick was deliberately indifferent to plaintiff's cell conditions.

**Fourteenth Amendment – Procedural Due Process**[6]

Plaintiff also claims that Hosey and Morgan violated his due process rights by making him stand naked, in sewage, for twenty-five minutes while they shook down his second cell on 1A wing. (Compl. at 25); *see Sandin v. Conner*, 515 U.S. 472, 486-87 (1995) (stating that a state "might conceivably" violate a prisoner's liberty interest by subjecting him to an "atypical, significant deprivation"). Even if such treatment implicates the due process clause, which the Court does not

---

[6]All of the defendants are entitled to judgment on any substantive due process claim plaintiff asserts. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that a claim cannot be analyzed under the rubric of substantive due process if another amendment provides an "explicit textual source of constitutional protection against" the challenged action).

15

decide, plaintiff still could not defeat defendants' motion on this claim. To do so, plaintiff would have to offer evidence either that defendants' actions were predictable and authorized, or that the post-deprivation remedies available to him were inadequate. *See Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 940 (7th Cir. 2003) ("[W]hen predeprivation hearings are impractical because the actions of the state officers were 'random and unauthorized' the state is only responsible for providing postdeprivation remedies."). The post-deprivation remedy in this case is IDOC's grievance procedure, and nothing in the record suggests that it cannot redress the alleged deprivation of liberty, even if that interest has constitutional protection. Consequently, the Court grants summary judgment to Hosey and Morgan on plaintiff's due process claim.

The result is the same for any due process claim plaintiff asserts against Briick and Schonauer for their alleged failure to respond to his grievances. The Seventh Circuit has held that prison grievance procedures do not create a liberty interest protected by the due process clause. *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Thus, even if Briick and Schonauer disregarded plaintiff's grievances, a fact issue the Court does not decide, those actions would not violate plaintiff's due process rights.

**Equal Protection**

Plaintiff alleges that defendants Vandiver, Shaw, Edwards, Hunter, Agnew, Wright, Harris, Hosey, Morgan, Peto, Bell, Adams, Schonauer and Briick violated his equal protection rights by depriving him, and no other 1A wing inmate, of clothes, bedding and hygiene items. (*See* Pl.'s Decl. Supp. Pl.'s Resp. Defs.' Mot. Summ. J. ¶ 16 ("[P]laintiff was discriminated against by way of acts complained of in his conditions of confinement due to all other prisoners on 1A wing had their

16

minimal necessities for cell essentials in their possession.").) To defeat defendants' motion on this "class of one" claim, plaintiff must offer evidence that suggests: (1) "he [was] intentionally treated differently from others similarly situated" and (2) there is no rational basis for the differing treatment or it stemmed from defendants' illegitimate animus toward him. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

To support the first element, plaintiff submitted affidavits of other inmates who have been held in 1A wing. (*See* Pl.'s Ex. B.) These affidavits contradict plaintiff's claim that he was the only 1A wing inmate denied hygiene items. (*See id.*, Trimby Aff. ¶ 2 (stating that he has been housed on wing 1A and "*[a]ll* . . . inmates who reside on 1A wing are . . . denied," among other things, hygiene items and showers (emphasis added) *id.*, 5/26/02 Sturdivant Aff. ¶ 1 (same); *id.*, 5/26/02 Courtney Aff. ¶ 1 (same); *id.*, Gay Aff. ¶ 1 (same).) But, the affidavits support plaintiff's claim that other 1A wing inmates were given clothing and bedding. (*See id.*, Trimby Aff. ¶ 2 (stating that 1A wing inmates are denied "laundry pick up, change of sheets and jumpsuits once a week"; *id.*, 5/26/02 Sturdivant Aff. ¶ 1 (same); *id.*, 5/26/02 Courtney Aff. ¶ 1 (same); *id.*, Gay Aff. ¶ 1 (same).) Thus, there is a genuine issue for trial as to whether plaintiff was treated differently than other 1A wing inmates.

There is also a fact issue as to the second element of plaintiff's claim created, oddly enough, by defendants. They do so through the affidavit of Venita Wright, who was a shift commander at Stateville in May 2002. (Wright Aff. ¶ 1.) During that time, Wright says, 1A wing contained "strip cells" where inmates who were considered a threat to themselves or others were housed. (*Id.* ¶ 6.) She also says that, as a matter of course, inmates in those cells were given a paper gown, rather than standard prison clothing, to wear. (*Id.* ¶ 8.) Further, Wright says, if an 1A wing inmate complained

of an inoperable sink or toilet, it was fixed, or the inmate was moved, within twenty-four hours. (*Id.* ¶ 11.) Coupled with the undisputed fact that plaintiff spent at least eleven days on 1A wing without any clothing and in a cell with a broken sink and toilet, Wright's testimony supports the inference that there was no rational basis for defendants to confine plaintiff in those conditions. Vandiver, Shaw, Edwards, Hunter, Agnew, Wright, Harris, Hosey, Morgan, Peto, Bell and Adams' motion for summary judgment on the equal protection claim is, therefore, denied.

The situation is different for Schonauer and Briick. Because, as stated earlier, there is no evidence that either defendant saw, communicated with, or was otherwise aware of the treatment plaintiff allegedly received on 1A wing, they are entitled to judgment on the equal protection claim.

**State Law Claims**

Plaintiff also alleges that defendants are liable for violating Illinois' Code of Corrections, which: (1) requires IDOC to give "every committed person . . . access to toilet facilities. . . . clothing adequate for the season, bedding, soap[,] . . . towels and medical . . . care"; and (2) prohibits it from using "[c]orporal punishment" or "restrictions on diet, medical or sanitary facilities" as punishment. *See* 730 Ill. Comp. Stat 5/3-7-2(a), (d); *id.*, 5/3-8-7(a), (b)(1); (Mem. Law Supp. Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. at 5 n.1[7]). The Code does not, however, create a private right of action. *Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill. App. Ct. 2000) ("Prison regulations . . . were *never* intended to confer rights on inmates or serve as a basis for constitutional claims. Instead, [IDOC's] regulations, as well as the Unified Code, were designed to provide guidance to prison officials in the

---

[7]In his brief, plaintiff incorrectly cites to 730 Ill Comp. Stat. 5/3-10-8, the portion of the Code that pertains to juveniles.

18

administration of prisons." (emphasis original)); *see McNeil v. Carter*, 742 N.E.2d 1277, 1280-81 (Ill. App. Ct. 2001) (affirming dismissal of an inmate's claim for violation of the Unified Corrections Code because it "was not generally intended to protect prisoners from inadequate medical care while incarcerated."). Consequently, all defendants are entitled to judgment on plaintiff's state law claims.

**Conclusion**

For the foregoing reasons, the Court finds that there is no genuine issue of material fact on: (1) plaintiff's state law claims against all defendants, who are entitled to judgment as a matter of law on them; (2) plaintiff's federal claims against Briley, Catchings, Mote, Selmon, Baldwin, Sawyer, Martin, King, Calmes, Turner, Artl, Grubbs, Langston, Thompson, Schonauer and Briick, who are entitled to judgment as a matter of law on them; and (3) the Fourteenth Amendment claims plaintiff asserts against Morgan and Hosey, who are entitled to judgment as a matter of law on them. Therefore, the Court grants in part and denies in part Tilden and the Briley defendants' motions for summary judgment [doc. nos. 277 & 282]. That leaves for trial plaintiff's: (1) Eighth Amendment medical care claims against Vandiver, Shaw, Edwards, Hunter, Agnew, Wright, Harris, Hosey, Morgan, Peto, Bell, Adams, Taylor and Tilden; and (2) Eighth Amendment cell conditions and Fourteenth Amendment equal protection claims against Vandiver, Shaw, Edwards, Hunter, Agnew, Wright, Harris, Hosey, Morgan, Peto, Bell and Adams.

**SO ORDERED.**                **ENTERED:**

**September 26, 2008**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**

19